OPINION
{¶ 1} The Ohio Public Works Commission (hereinafter "OPWC") appeals from the judgment of the Court of Common Pleas of Marion County in an action for declaratory judgment brought by the Marion County Park District (hereinafter "Park District"). The trial court's judgment ordered, inter alia, that the OPWC approve the Park District's application for $160,270.18 for its Bowstring Bridge Restoration Project from the Clean Ohio Conservation Fund (hereinafter "Clean Ohio"). This appeal was originally assigned to our accelerated calendar, but we have elected to issue a full written opinion in accordance with Loc.R. 12(5). Because the clear and unambiguous text of the statute does not authorize the funding sought by the Park District, we reverse the judgment of the trial court.
 {¶ 2} Following are the undisputed facts in this matter as shown by the pleadings and attached exhibits. The Park District in April, 2002, filed its application for $160,270.18 in Clean Ohio funding for a project to repair and restore a bowstring bridge (hereinafter "bridge"), which links the Park District's Caledonia Preserve (hereinafter "Preserve"), with the Village of Caledonia. Funding was sought by the Park District to restore and open the bridge, now closed because of deterioration and safety concerns, to pedestrian traffic. Opening the bridge, in turn, would improve access to the Preserve. Both the Caledonia Preserve and the bridge were acquired by the Park District years prior to the existence of Clean Ohio.
 {¶ 3} The Park District filed its application for Clean Ohio funding with the Natural Resources Assistance Council No. 16 (hereinafter "District 16"). Regional natural resource assistance councils were created by R.C. 164.21 to receive and review applications from qualifying entities within their regional boundaries and to approve or disapprove the applications according to statutory requirements. Applications that meet the requirements are forwarded to the director of OPWC for funding; applications that do not meet the requirements are not forwarded and are not funded through Clean Ohio grants. See R.C. 164.22.
 {¶ 4} Based on a letter from the OPWC Director, W. Lawrence Bicking, to District 16 advising that the Park District's application did not meet all of the necessary requirements for funding, District 16 did not forward the application to the OPWC. Thereupon, the Park District brought an action for declaratory judgment asking the court to find that the project fell within the statutory parameters, that District 16 be directed to approve and forward the application to OPWC, and that OPWC be ordered to approve the application and to fund the project. Both parties moved the trial court for summary judgment. The court granted appellee-Park District's motion, holding that the bridge restoration was within the purposes authorized by the statute, and ordered that the application be funded.
 {¶ 5} OPWC appeals the judgment of the trial court and asserts the following assignment of error:
The lower court erred in presuming that the legislature carelesslychose the word "and" when crafting R.C. 164.22(a), governing conjunctivequalification for land development funding applicants.
 {¶ 6} The case before us, requiring this court to construe a provision of the statute establishing the Clean Ohio Conservation Fund, appears to be a matter of first impression.
 {¶ 7} In the November 2000 general election, the voters of Ohio approved a proposed constitutional amendment, known as State Issue I, authorizing the General Assembly to pay for certain conservation and revitalization projects and to issue bonds and other obligations of the state to fund such projects.[1] The General Assembly implemented this constitutional grant of authority by enacting Amended Substitute House Bill No. 3, which went into effect July 26, 2001.
 {¶ 8} At issue in the case before this court is Section 164.22(A), the relevant portion of which reads:
Natural resources assistance councils shall review and approveor disapprove applications in accordance with sections 164.20 to164.27 of the Revised Code for grants for projects that propose todo either of the following:
 (A) Provide for open space acquisition and related development ofthose open spaces, including the acquisition of easements. Open spaceacquisition projects include acquisition of land or rights in land forparks, forests, wetlands, natural areas that protect an endangered plantor animal population, other natural areas, and connecting corridors fornatural areas. Related development projects include projects for theconstruction or enhancement of facilities that are necessary to make anopen space area accessible and useable by the general public. (Emphasissupplied.)
 {¶ 9} Since the Park District already owns the Preserve and the bridge, the application requests funding to develop these existing resources but not to acquire any new land or rights in land for open spaces. Appellee asserts, however, that the statute permits funding of efforts to improve access to existing open spaces, i.e. "development", without a contemporaneous acquisition of land or land rights.
 {¶ 10} In support of this proposition, Appellee maintains, and the trial court ruled, that the word "and" in the first paragraph of the section should be read "or" and treated the words "related" and "those" as superfluous and not needing to be considered when deciphering the meaning of the statutory authorization. The effect of this construction is to permit the proposed Park District project to qualify for grant funding under the statute. By construing the statute in this manner, District 16, and other natural resources assistance councils around the state, could fund projects that "provide for open space acquisition" or
"development of open spaces" or both.
 {¶ 11} The appellant Ohio Public Works Commission, which administers the Clean Ohio Conservation Fund, however, maintains that the words "or", "related", and "those" are not superfluous, are intended by the General Assembly to have meaning, and must be accorded their plain and literal meaning in applying the facts to the statute.
 {¶ 12} Consequently, OPWC maintains that to be eligible for Clean Ohio funding, a project must, at a minimum, include an actual acquisition of open space, and any funds for development must be used for the property thereby acquired.
 {¶ 13} When a statute is clear and unambiguous, there is neither any need nor authority to apply statutory rules of construction to ascertain the statute's meaning. Cline v. Ohio Bur. of Motor Vehicles
(1991), 61 Ohio St.3d 93, at 96 (citations omitted). In such a situation, the language of the General Assembly is sufficient and must be applied as written. Sears v. Weimer (1944), 143 Ohio St. 312, at paragraph five of the syllabus.
 {¶ 14} In the case before us, the statute authorizes grants for projects that "provide for open space acquisition AND RELATED development of THOSE open spaces * * *." The statute is clear that the primary thrust of the statute is the funding of the acquisition of open spaces. The phrase "related development of those open spaces" is secondary and dependant on the existence of the first condition, i.e., "open space acquisition". It is this primary condition which the Park District has not satisfied and which, therefore, disqualifies its application for Clean Ohio funding.
 {¶ 15} R.C. 1.02(F), is cited by Appellee as authority for interpreting the word "and", the conjunctive, to mean "or", the disjunctive. But R.C. Section 1.02 initially provides that such construction may not be used "if the context requires otherwise", and it may only be applied "if the sense requires it."[2] Since neither criterion is satisfied in the case sub judice, R.C. 1.02 is not applicable here.
 {¶ 16} Because the General Assembly has clearly stated its requirement that funds from the Clean Ohio Fund be utilized for land acquisition and that expenditure of funds for development be related to the land acquired, the trial court erred when it determined otherwise and ordered the OPWC to approve a grant application that did not fall within the parameters of the statutory authorization.
 {¶ 17} Although the statute does not provide the Park District the result it desires, this does not, however, mean that the Park District has no remedy. An enactment by the General Assembly can be changed or amended as the legislature deems appropriate. The Park District may, therefore, pursue its remedy in that forum if it so chooses.
 {¶ 18} The assignment of error is sustained.
 {¶ 19} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Bryant, J., concurs.
Walters, P.J., concurs in judgment only.
[1] The passage of Issue I added Section 20 to Article VIII of the Ohio Constitution. See, generally, Ohio Legislative Service Commission, Final Analysis Am.Sub.H.B. No. 3, at 8.
[2] R.C. 1.02 provides in pertinent part: "As used in the Revised Code, unless the context otherwise requires: * * * (F) `And' may be read `or,' and `or' may be read `and' if the sense requires it. * * *"
(Emphasis added.)